UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP. 2 9 2018

Wanda Williams,

        Plaintiff,

       –v–

New York City Department of Education and
Principal Teri Stinson,

        Defendants.

17-cv-1996 (AJN)

MEMORANDUM
OPINION AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Wanda Williams, proceeding *pro se*, filed this action under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law §§ 290–97, and the New York City Human Rights Law

("NYCHRL"), N.Y. City Admin. Code §§ 8-101–31. Ms. Williams alleges that Defendants New

York City Department of Education ("DOE") and Principal Teri Stinson discriminated against

her on the basis of age and race and subsequently retaliated against her. Currently before the

Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") under

Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 41.

For the following reasons, Defendants' motion to dismiss as to Plaintiff's Title VII and

ADEA claims is GRANTED in part and DENIED in part.

## I.    Background

The Court first provides the factual and procedural background leading to this motion to

dismiss. For the purpose of evaluating this motion to dismiss, all plausible allegations in the

1

amended complaint are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Further, in this *pro se* case, the Court reads Ms. Williams's papers "liberally" and "interpret[s] them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### A.    Factual Background

This action arises out of Plaintiff's employment with the DOE. Plaintiff is a 58-year-old woman who worked as a per diem substitute teacher for the DOE from 2011 through the circumstances leading to this case. Dkt. No. 35, FAC ¶ 6 & Exhibits at 3 (listing birth date as September 6, 1959).[1] Plaintiff possesses a New York State teaching certification for birth through second grade and, after obtaining a Master's Degree, began substitute-teaching and applying for full-time teaching positions. FAC ¶ 3.

The facts resulting in Plaintiff's alleged discriminatory treatment are as follows. On or about January 13, 2014, when she was 54 years old, Plaintiff accepted a weeklong teaching assignment with DOE's Hernandez-Hughes School ("PS 30M"). FAC ¶ 23. After Plaintiff reported to work, the principal, Defendant Teri Stinson, reportedly asked her to remain in the position for the remainder of the school year in order to offer the students of Kindergarten class 229 ("K-229") "educational stability." FAC ¶¶ 1, 24. Plaintiff agreed. FAC ¶ 24. Accordingly, from January through March 2014, each week, administrators at PS 30M asked Plaintiff to return to teach the following week. FAC ¶ 26. They also informed her that the former teacher, whose

---

[1] Plaintiff's race is not apparent from the FAC or any other judicially noticeable materials. Although it appears from Plaintiff's "Motion Opposing Defendant's Request to Dismiss Amended Complaint" that Plaintiff may be Black, *see* Dkt. No. 46 at 4 (discussing the DOE's alleged practice of "recruiting lesser qualified, younger, non-Black candidates"), the Court may not consider matters outside the pleadings, including factual assertions stated in briefs or memoranda, in evaluating a 12(b)(6) motion. *See Fonte v. Board of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

classroom she was evidently covering, would not be returning to work for health reasons. FAC ¶ 26. Plaintiff agreed to this arrangement. FAC ¶ 26.

Plaintiff alleges that she was effective in this position, performing tasks including completing report cards, attending parent/teacher conferences, lesson planning, and classroom management, and receiving approval from parents, the teacher assistant, the assistant principal, and the principal herself. FAC ¶¶ 27–28, 34. According to Plaintiff, in addition to the parties' verbal agreement that she could remain in this position for the remainder of the 2013–2014 school year, DOE contract rules and United Federation of Teachers ("UFT") regulations gave her the right to remain in this position for the subsequent school year as well. FAC ¶¶ 1, 27.

Instead, according to the amended complaint, school administrators engaged in a series of acts designed to harm Plaintiff and prevent her from working at PS 30M—or, eventually, obtaining any further employment through the DOE. First, Principal Stinson directed a clerical agent to tamper with the title of the assigned teaching position to make it appear as if Plaintiff was not working in K-229. FAC ¶ 29. Second, school administrators failed to offer her adequate pay. Specifically, because Plaintiff had worked 30 consecutive days, she claims agreements with the UFT and the DOE entitled her to a higher permanent salary or "Status Z" pay. FAC ¶¶ 29–30. Despite Plaintiff's repeated requests to revise her assignment or increase her pay, Defendants declined. FAC ¶¶ 30–32. Plaintiff was also not paid for working through preps and lunches. FAC ¶ 39. Though they claimed these decisions were based on budgetary shortfalls, Defendants were able to hire a new full-time Kindergarten teacher around the same time. FAC ¶ 31.

In March 2014, Plaintiff's treatment worsened. According to Plaintiff, administrators began to harass and bully her, "trying to force Plaintiff to cause tension with other staff." FAC

¶ 35. Then they replaced Plaintiff in her position in K-229: the payroll secretary informed Plaintiff that she was required to take a day off, and Ms. Stinson hired friends to work the remainder of the 2014 term in K-229. FAC ¶¶ 38–40. As a result, Plaintiff claims she was forced back onto the per diem list, where she could only obtain lower-paying substitute teaching positions. FAC ¶ 41. Finally, administrators gave the New York City Department of Education a memo assigning Plaintiff a "U" rating, indicating that she was unqualified for a teaching position. FAC ¶ 36. Though the memo was dated around June 9, 2014, Plaintiff alleges that it was either filed secretly or back-dated because it did not appear in the DOE's system until September. FAC ¶¶ 36, 48. When September arrived, administrators hired a much younger teacher who was less qualified than Plaintiff to take over K-229. FAC ¶ 42. And because of the "U" rating, Plaintiff was informed that she was terminated from any employment with DOE. FAC ¶ 48. Plaintiff claims that she then was unable to obtain employment anywhere in the educational system, including with community-based organizations, day care centers, and other vendors, and experienced irreparable damage and mental anguish. FAC ¶¶ 1, 15.

In addition to the incidents at PS 30M, both before and after her employment there, Plaintiff claims that she was repeatedly passed over for full-time teaching responsibilities at different New York public schools. FAC ¶ 4. Despite receiving praise from coworkers and administrators, she contends that school administrators repeatedly, and allegedly falsely, told her that she could not be hired for budgetary reasons. FAC ¶¶ 4, 6. Plaintiff nonetheless observed other teachers who were younger and possessed fewer credentials receiving positions. FAC ¶¶ 4, 6.

On the basis of these facts, Plaintiff claims that Defendants denied her employment because of age and race and retaliated against her in violation of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

## B.     Procedural Background

At some point after the above-described facts occurred, but on her representation "not over the 300-day deadline," Ms. Williams filed an Equal Employment Opportunity Commission ("EEOC") complaint. FAC ¶¶ 9, 11. The EEOC then issued a right-to-sue letter noting that it had investigated Plaintiff's charge of age discrimination against the DOE and was unable to conclude that the DOE's conduct violated federal antidiscrimination laws. *Id.* & Exhibits at 5. Though the letter was dated November 29, 2016, *id.*, Plaintiff claims that the EEOC notice "had an EEOC company meter strip on it dated around December 5, 2016" and "arrived at Plaintiff's residence on or around December 19, 2016." FAC ¶ 9. Plaintiff claims the delay was caused by holiday mail volume. FAC ¶ 9.

Plaintiff filed her original complaint on March 17, 2017, see Dkt. No. 2, and on August 1, 2017, Defendants filed their initial motion to dismiss. *See* Dkt. No. 17. On September 22, 2017, Plaintiff filed her amended complaint, and on November 6, 2017 Defendants filed the motion to dismiss presently before this Court. Dkt. Nos. 35, 41.

## II.     Discussion

Plaintiff asserts disparate treatment and retaliation claims under Title VII, the ADEA, the NYCHRL, and the NYSHRL.

## A.     Procedural Hurdles to Plaintiff's Federal Claims

The Court turns first to procedural hurdles facing Plaintiff's federal claims. Defendants argue that Plaintiff's Title VII and ADEA claims should be dismissed because the statutes do not

allow for individual liability and because the claims are untimely and not administratively exhausted.

Evaluating these arguments, the Court concludes that Plaintiff's Title VII claims against both Defendants and her ADEA claims against Ms. Stinson must be dismissed. But the Court declines to dismiss Plaintiff's ADEA discrimination or retaliation claims against the DOE.

### 1.    Administrative Exhaustion under Title VII and the ADEA

Exhaustion of administrative remedies is a "precondition to suit" under Title VII or the ADEA. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82–83 (2d Cir. 2001). Courts will deem administrative remedies sufficiently exhausted for claims brought before the EEOC as well as additional claims that are "reasonably related to those that were filed with the agency." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). To determine whether claims are reasonably related, the court must examine "the factual allegations made in the EEOC charge itself." *Id.* at 201. Particularly in a case brought by a *pro se* plaintiff, "it is the substance of the charge and not the label that controls" the court's determination whether a given charge was properly presented to the EEOC. *Wallace v. Seacrest Linen*, No. 04-CV-6035 (GBD), 2006 WL 2192777, at *2 (S.D.N.Y. Aug. 2, 2006) (quoting *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)). But even given this liberal standard, failing to check a box alleging a particular type of discrimination, or alleging one type of discrimination and not another, is generally not sufficient to meet the administrative exhaustion requirement with respect to the omitted allegation. *See, e.g.*, *id.*; *Moultrie v. VIP Health Care Servs.*, No. 08-CV-0457 (DLI), 2009 WL 750219, at *3 (E.D.N.Y. Mar. 19, 2009), *aff'd* 412 F. App'x 382 (2d Cir. 2011) (summary order).

In this case, Defendants argue that Ms. Williams failed to exhaust administrative remedies regarding her Title VII and ADEA retaliation claims by failing to include those claims in her EEOC charge.  Dkt. No. 42, Def. Br. at 2, 11–12.

As neither party filed Plaintiff's EEOC charge with its submission, the Court can only draw on the complaint and the EEOC's notice of dismissal in evaluating this argument.  These materials do not indicate that Plaintiff exhausted her administrative remedies with respect to her Title VII claim.  As Defendants point out, the EEOC notice refers only to its investigation of Plaintiff's claims of "discrimination . . . on the basis of . . . age," Def. Br. at 12 (citing FAC ¶ 21), suggesting that Plaintiff may not have included race discrimination in her charge.  Plaintiff's complaint does not plead otherwise; indeed, it does not specify Plaintiff's race at all, and only mentions race discrimination in passing.  *See* FAC ¶ 3 (stating that "Plaintiff has documentation/records of being . . . passed over for . . . persons of other ethnicities/nationalities . . . due to age and not excluding race"); FAC ¶ 13 (referring to videos referencing racism at the EEOC); FAC ¶ 14 ("Plaintiff . . . was wrongfully denied employment based on age, (but not excluding race, under Title VII).").  Even construing the Plaintiff's *pro se* pleading liberally, taking these statements as true, and drawing all reasonable inferences in her favor, the Court cannot find these minimal references sufficient to plead that Plaintiff raised her race discrimination claims with the EEOC.  Nor are her race discrimination claims reasonably related to her properly exhausted age discrimination claims.

It is not clear whether this logic extends to dismissal of Plaintiff's ADEA retaliation claim.  It is true that the EEOC notice refers only to "discrimination" on the basis of age, and not retaliation.  But Plaintiff might argue that, in the absence of the charge or EEOC file, this is an insufficient basis for concluding that Plaintiff failed to raise retaliation claims with the EEOC—

particularly when Plaintiff's complaint repeatedly alleges retaliation, and does so with some specificity. *See* FAC ¶¶ 1, 2, 14, 19, 36. The Court need not address the merits of this argument because the Court concludes *infra* that Plaintiff's retaliation claims must be dismissed for failure to state a claim.

Accordingly, Plaintiff's Title VII claims against the DOE and Ms. Stinson are DISMISSED.

### 2. Individual Liability under the ADEA

The Court next turns to Defendants' arguments for dismissing Plaintiff's ADEA claims. In this circuit, it is long settled that individual defendants may not be subject to liability under Title VII. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). As the Second Circuit explained in *Tomka v. Seiler Corp.*, Title VII's statutory scheme of protecting small employers and awarding remedies like backpay and reinstatement is incompatible with treating agents as statutory employers. 66 F.3d 1295, 1313–17 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

The same logic applies to the ADEA. Although the ADEA is a "hybrid statute" created from remedies provided under both Title VII and FLSA, "[a]s far as the term 'employer' is concerned, the ADEA was modeled after Title VII.'" *Wray v. Edward Blank Assocs., Inc.*, 924 F. Supp. 498, 503 (S.D.N.Y. 1996). *Compare* 42 U.S.C. § 2000e(b) *with* 29 U.S.C. § 623(a)(1). Courts in this circuit have therefore consistently found that the ADEA, like Title VII, does not impose liability on individuals. *Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (collecting cases); *Sulehria v. New York*, No. 13-CV-6990 (AJN), 2014 WL 4716084, at *4 n.3 (S.D.N.Y. Sept. 19, 2014); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011)

(summary order) (noting that the ADEA does not "subject[ ] individuals, even those with supervisory authority over the plaintiff, to personal liability").

Accordingly, Plaintiff's ADEA claims against Ms. Stinson are DISMISSED.

### 3. Timeliness of ADEA Claims Against DOE

The ADEA imposes two timing requirements on complainants. In a deferral state like New York, which possesses its own age discrimination laws and enforcement authorities, individuals aggrieved by acts of discrimination have "300 days [from the alleged discriminatory action] to file an ADEA charge with the EEOC, whether or not the charge is initially filed with the deferral-state agency." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 328 (2d Cir. 1999) (citing 26 U.S.C. §§ 626(d)(2), 633(b)). Second, "a claim under . . . the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996).

Defendants contend that Ms. Williams missed both deadlines: they claim she failed to commence her action within 90 days of receiving her right-to-sue letter from the EEOC and she failed to file an EEOC charge within 180—or even 300—days of any alleged discriminatory acts. Def. Br. at 2; Reply, Dkt. No. 47 at 4. The Court rejects both arguments.

### a. Timely EEOC Charge Filing

The operative EEOC filing window in this deferral-state ADEA case is 300 days from each alleged discriminatory act. *Tewksbury*, 192 F.3d at 328. Defendants' contention that a 180-day statute of limitations applies is incorrect. Defendants base this filing window on (a) the contention that *Tewksbury* applied the Title VII statute of limitations to the ADEA and (b) the assumption that only a 180-day window would apply to a Title VII case, despite the fact that deferral agency worksharing agreements typically circumvent the shorter timeline. *Tewksbury*,

192 F.3d at 326-27; *Fitzgerald v. Ford Marrin Esposito Witmeyer & Gleser, L.L.P.*, 37 F. Supp. 2d 621, 624–25 (S.D.N.Y. 1999) (collecting cases); *see also* 29 C.F.R. § 1626.10(c) ("When a worksharing agreement with a state agency is in effect . . . "[c]harges received by one agency under the agreement shall be deemed received by the other agency for [timeliness] purposes."). As *Tewksbury* makes clear, both positions are erroneous.

With respect to the 300-day filing window, "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 490 (2d Cir. 2018); *see also Kane v. St. Raymond's Roman Catholic Church*, No. 14-CV-7028 (AJN), 2015 WL 4270757, at *5 (July 13, 2015 S.D.N.Y.) (noting that "a court will not usually dismiss a claim for failure to timely file an EEOC charge unless such failure is apparent from the face of the complaint"). Because "the administrative exhaustion requirement is the same under the ADEA as it is under Title II," the same burden allocation applies to ADEA cases. *See Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)

What events trigger the running of the filing period depends upon the type of act alleged by the plaintiff. When the plaintiff alleges a "discrete act" of employment discrimination, including termination, failure to promote, denial of transfer, or refusal to hire, each act triggers the running of the limitations period. *Anyanwu v. City of New York*, No. 10-CV-8498 (AJN), 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2018) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 526 U.S. 101, 114 (2002)). When, by contrast, the plaintiff alleges a continuing violation like hostile work environment, she "need only show that part of the violation took place within the limitations period." *Id.*

Plaintiff's complaint, even read generously, alleges only discrete acts, and not a continuing violation. Specifically, it appears to allege age discrimination based on failure to

promote or refusal to hire the plaintiff as a full-time kindergarten teacher, or termination or demotion from either full-time or per diem employment, which events apparently occurred on March 20, 2014; June 9, 2014; and "on or around September 2014." FAC ¶¶ 36, 38, 42. These are quintessentially discrete acts that each must be measured against the statute of limitations. *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 156 (2d Cir. 2012). It is true that Plaintiff marshals some allegations about bullying, which sometimes gives rise to hostile work environment claims. But her conclusory statements—without any accompanying allegations the bullying remarks were connected to her age—are an insufficient factual basis for the Court to infer her work environment was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner*, 496 F.3d at 240–41; *see also De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 639 (S.D.N.Y. 2011) ("Mere 'workplace bullying,' . . . is not enough to give rise to an actionable hostile work environment claim. Rather, there must be a showing that the conduct occurred because of the employee's membership in a protected class.").

Apart from misstating the statute of limitations, Defendants argue that Plaintiff's EEOC charge was not filed in a timely manner because she failed to allege when she filed it. Def. Br. at 3, 10. This is true as far as it goes: Plaintiff omitted her charge and merely pled that she was "not over the 300-day deadline." FAC ¶ 11. The only other information in the amended complaint going to Plaintiff's filing date is the fact that the EEOC charge has a charge number dated to 2015. *See* FAC at 21. But under the obligation to take Plaintiff's allegations as true and to construe them liberally, and in light of the burden on Defendants to prove that the claim was not timely filed, the Court cannot conclude that discrete acts of discrimination occurring fewer

11

than 300 days prior to the beginning of 2015—that is, after than March 7, 2014—are time-barred.

This window permits the primary discrete employment decisions at issue in the amended complaint. To the extent the amended complaint alleges discrimination based on DOE's actions outside that window—that is (a) tampering with Plaintiff's title, FAC ¶ 29, (b) failing to pay Plaintiff permanent salary or status Z pay, FAC ¶¶ 29–30, (c) failing to pay Plaintiff for working preps and lunches, FAC ¶ 39, and (d) incidents of alleged discrimination in hiring at other DOE schools, FAC ¶ 4—claims with respect to those actions are untimely and are DISMISSED.

### b. Timely Federal Complaint Filing

"There is a presumption that notice provided by a government agency was mailed on the date shown on the notice" and "received three days after its mailing." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011); *see also* Fed. R. Civ. P. 6(d). The receipt presumption may be rebutted or rendered not dispositive by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [the recipient] by mail." *Sherlock*, 84 F.3d at 526. A "self-serving date of notation" or other "unsupported allegation" that a document was received outside the three-day window may not constitute sufficient rebuttal. *Id.* at 526; *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) (summary order). But because courts must accept as true all allegations in the complaint and draw allegations in the light most favorable to the plaintiff, "courts in this circuit have repeatedly held that an allegation of the date of receipt of a right-to-sue letter must be credited as true on a motion to dismiss." *Avillan v. Brennan*, No. 16-CV-5611 (AJN), Dkt. No. 19, at 9 (S.D.N.Y. Sept. 15, 2017) (quoting *Williams v. City of New York*, No. 12-CV-8518

(RJS), 2014 WL 1383661, at *10 (S.D.N.Y. Mar. 26, 2014)); *see also Williams*, 2014 WL 1383661, at *10 (collecting cases), *aff'd*, 602 F. App'x 28 (2d Cir. 2015) (summary order). *But see Martinez v. Riverbay Corp.*, No. 16-CV-0547 (KPF), 2016 WL 5818594, at *4 (Oct. 4, 2016) (requiring "firm substantiation when a plaintiff contends that he received the right to sue letter more than three days after its mailing).

In this case, Plaintiff provides barely more than an unsupported allegation of late receipt by pointing to the date on the meter strip and the holiday season to explain why she received her right-to-sue letter "on or about December 19, 2016"—several weeks after the date on the EEOC papers and 88 days prior to the filing of her federal complaint. *See* FAC ¶ 9. Nonetheless, in the motion to dismiss posture, and in light of the dictate to construe the pleadings in a *pro se* case liberally, the Court finds these allegations sufficient—for now—to forestall dismissal.

## B. Procedural Hurdles to Plaintiff's State Law Claims

Defendants next argue that Plaintiff's NYCHRL and NYSHRL claims should be dismissed because she failed to file the requisite notice of claim and because her federal filing as to these claims was untimely. On the basis of the notice of claim argument, the Court grants Defendants' motion to dismiss with respect to the DOE. But because Ms. Stinson is not covered by the relevant statutes, the Court denies the motion to dismiss as to all claims against her.

### 1. Failure to File Notice of Claim

Under New York Education Law, no action or claim may be maintained against the DOE, a school, or any officer thereof "unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. EDUC. LAW § 3813(1). "Compliance with Section

3813(1) is a prerequisite for a suit naming a school district or its officers, and a plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal," and must be ascertained by federal as well as state courts. *Lewinter v. N.Y.C. Dep't of Educ.*, No. 13-CV-3253 (NSR), 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010). This provision applies to claims brought under either city or state law. *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. 2013). It does not, however, apply to school principals, who are not officers within the scope of § 3813(1).

Here, Plaintiff's amended complaint neither pleads nor proves that she filed the requisite notice of claim. Although some courts have held that filing an EEOC complaint may substantially comply with the notice of claim requirement, *see, e.g.*, *Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, No. 06-CV-6027T, 2007 WL 108470 at *2-3 (W.D.N.Y. Jan 12, 2007), such notice presumably must occur within the three-month time window. As there is no basis for the Court to conclude that Plaintiff's EEOC complaint was filed prior to January 1, 2015, the Court cannot find Plaintiff gave the District timely notice of her claims against it and its agents. Accordingly, the § 3813(1) bar applies, and her claims under the NYCHRL and NYSHRL are hereby DISMISSED.

### 2. Failure to Timely File Complaint

Defendants further contend that Plaintiff's federal filing of her NYCHRL and NYSHRL claims was untimely under New York Education Law. Def. Br. at 7. As applied to Plaintiff's remaining claims against Principal Stinson, the Court rejects this argument.

It is true that New York Education Law provides a one-year statute of limitations for filing any action or special proceeding against "officers of a school district, board of education, board of cooperative educational services, or school." *Edwards v. Jericho Union Free Sch. Dist.*,

904 F. Supp. 2d 294, 303 (E.D.N.Y. Nov. 16, 2012) (citing N.Y. Educ. Law § 3813(2-b)). But

as with the notice of claim filing requirement, "it is well-settled that school principals . . . are not

'officers' of the District or Board within the meaning of the statute." *Id.* (citing cases).

Therefore, the Court declines to dismiss claims against Ms. Stinson on this basis.

## C.     Facial Plausibility of Plaintiff's Remaining Claims

The Court finally turns to Defendants' contention that Plaintiff's remaining claims are

facially implausible. To survive a motion to dismiss, a plaintiff must plead "sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* Although *pro se* complaints must be

construed liberally and interpreted to raise the strongest argument they suggest, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotations and citation

omitted).

The Court concludes that Plaintiff's age discrimination claim, construed as a termination

or demotion claim, meets this standard. However, her retaliation claims do not. As a further

preliminary matter, the Court concludes that Plaintiff's amended complaint fails to state a claim

of race discrimination against Ms. Stinson under the NYCHRL and NYSHRL because Plaintiff

neglects to plead any facts from which the Court could infer her race or that race was a factor in

any of the timely conduct alleged in her complaint. *See supra* n.1 and Part II.A.1. Accordingly,

Plaintiff's ADEA, NYCHRL, and NYSHRL retaliation claims and Plaintiff's NYCHRL and

NYSHRL race discrimination claims against Ms. Stinson are DISMISSED.

15

### 1. Claims Based on Age

"For the most part, age discrimination claims under the ADEA, NYSHRL, and NYCHRL are analyzed under the same standard." *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 458 n.7 (S.D.N.Y. 2013). Accordingly, unless otherwise noticed, the following discussion extends to Plaintiff's remaining state law claims against Principal Stinson.

### a. Discrimination Claims

To state an age discrimination claim, "a plaintiff must plead facts that, if true, lead to a plausible inference that the plaintiff suffered an adverse employment action because she possesses the protected characteristic alleged in the lawsuit"—here, age. *Kane v. St. Raymond's Roman Catholic Church*, No. 14-CV-7028 (AJN), 2015 WL 4270757 at *6 (S.D.N.Y. July 13, 2015) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII [or the ADEA] only when it occurs because of an employee's . . . protected characteristic"). At the pleading stage, a Plaintiff "must provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir.)). And, in an ADEA case, the Plaintiff must allege that age was the but-for cause of the employer's action. *Id.* at 86.[2]

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in [age-related] degrading terms; or

---

[2] Courts disagree as to whether the but-for causation standard applies to NYCHRL and NYSHRL as well as federal age discrimination claims. *Compare Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010) (assuming, without deciding, that the but-for standard so extends) *with Delville*, 920 F. Supp. 2d at 458 n.8 (citing New York state cases reaching the opposite conclusion). Because Plaintiff's claims survive the more stringent federal standard, any differences are not relevant to the outcome of this motion to dismiss.

its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Or it can arise "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312–13 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000)); *Franchino v. Terence Cardinal Cook Health Care Ctr.*, 692 F. App'x 39, 41–42 (2d Cir. 2017) (summary order) (applying this principle to an ADEA case). At the pleading stage, "the evidence necessary to satisfy th[is] initial burden . . . is minimal." *Littlejohn*, 795 F.3d at 313 (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)). This minimal burden is satisfied with respect to Plaintiff's allegations that she was terminated or demoted from the 2014–2015 position.

Plaintiff's surviving allegations point to a series of possible adverse employment actions: (a) failing to pay Plaintiff permanent salary or status Z pay from the period of March 7 to March 20, FAC ¶¶ 29–30, (b) failing to pay Plaintiff for working preps and lunches for the period from March 7 to March 20, FAC ¶ 39, (c) harassing and bullying Plaintiff, FAC ¶ 35, (d) forcing Plaintiff to depart her position in K-229 in March 2014, FAC ¶ 39 (e) failing to hire or promote Plaintiff to a permanent Kindergarten position for the 2014–2015 school year, see FAC ¶ 42, and (f) giving Plaintiff a "U" rating, FAC ¶ 36.

To attempt to connect these allegations of mistreatment at work to her protected class, Plaintiff identifies four pieces of age-specific information: (a) that in September 2014, a younger teacher was ultimately hired for the 2014-2015 school year position, FAC ¶ 42; (b) the fact of her own age; (c) that in January or February 2014, when Plaintiff was told there was no money in the

17

budget to give her status Z pay, a younger teacher was hired, FAC ¶ 31; and (d) that younger, less qualified individuals were hired at other schools, FAC ¶ 6. Only the first is pertinent. That plaintiff is over 40 and experienced mistreatment at work is not, without more, enough to state a claim of age discrimination. *See Henderson*, 257 F.3d at 252. And comparators who were hired prior to any plausible complaint-filing window cannot support an inference of discrimination with respect to any of Plaintiff's remaining claims. Similarly, without more, a comparator who was hired into a position to which Plaintiff does not allege she applied is insufficiently similarly situated to raise an inference of discrimination. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal quotation marks omitted).

Standing alone, the 2014–2015 hire is a thin basis for the Court to infer that discriminatory intent—rather than personal dislike, frustration with Plaintiff's frequent questions about pay, or an effort to save money—was a but-for cause of her treatment, particularly as far as pay policy decisions are concerned. But if the Court accepts as true Plaintiff's contention that she was entitled to return for the subsequent school year, Defendants' decision to ask her to leave in March appears to be a demotion or termination decision. It is settled law in this circuit that replacement of a terminated or demoted employee by a less qualified member outside the protected class is all of the basis necessary, at this stage, to raise a plausible inference of discrimination. *See Littlejohn*, 795 F.3d at 312–13.

The remaining question is whether either the delay in Plaintiff's replacement or the fact that Plaintiff was replaced on a temporary basis with persons she has not pled were younger than her are sufficient to undercut the ordinary inference. Under the obligation to draw inferences in

Plaintiff's favor, the Court cannot conclude that they are. A delay of several months generally is not sufficient to excuse an employer's replacement of a terminated employee with a new hire outside her protected class, *see Wolfe v. Time, Inc.*, 702 F. Supp. 1045, 1048 (S.D.N.Y. 1989) (finding ten months between firing and replacement hire sufficient to preclude summary judgment)—especially if, as here, Plaintiff alleges that the new hire was less qualified than she was, and if the delay is explained by the school year calendar. And courts may look to the age of either a temporary or a permanent replacement in evaluating whether an inference of discrimination is appropriate. *See Hollander v. Am. Cynamid Co.*, 172 F.3d 192, 199 n.3 (2d Cir. 19) (noting plaintiff established prima facie case of age discrimination despite the fact that temporary replacement was not sufficiently younger to raise inference of age discrimination), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000); *Lewis v. St. Cloud Univ.*, 467 F.3d 1133, 1136 (8th Cir. 2006); *Mercer v. Capitol Mgmt. & Realty, Inc.*, 242 F. App'x 162, 163 (5th Cir. 2007).

Defendants make two arguments to the contrary. First, they contend that Plaintiff does not plead that she applied for the September position. This conclusion requires ignoring Plaintiff's evident claim that she did not have to apply and ungenerously reading Plaintiff's *pro se* complaint. The Court declines to do either.

Second, Defendants argue that "younger employees being hired for positions is not a discriminatory act and cannot be sufficient grounds alone for age discrimination," and that Plaintiff's claims accordingly should be dismissed. Def. Br. at 15. The cases Defendants cite do not warrant this conclusion. *Hollander* noted only that hiring *insignificantly* younger workers could not support an inference of age discrimination. 172 F.3d at 199 n.3. Yet even so, the court concluded that the plaintiff could state a prima facie case based only on her replacement by (a) a

barely younger employee and (b) an employee hired several years later. *Id.* The allowance that a replacement hire need not be much younger than the plaintiff—and need not immediately be hired—supports the sufficiency of Plaintiff's claims more than it undercuts them. And the Second Circuit's unpublished disposition in *Feldman v. Looms* concluded only that, at summary judgment, replacement by a younger employee did not *prove* age discrimination. No. 98-9680, 1999 WL 973518, at *2 (2d Cir. Oct. 4, 1999) (summary order). That conclusion is not sufficient to reject Plaintiff's claims at the motion to dismiss stage, particularly in light of the Second Circuit's repeated admonitions that alleging replacement by or reassignment of duties to employees outside the protected class raises an inference of discrimination. *See Littlejohn*, 795 F.3d at 312–13; *Carlton*, 202 F.3d at 135–36 (2d Cir. 2000).

This theory cannot, however, carry Plaintiff any further. Although Plaintiff's complaint attributes several additional aspects of her employment with DOE to age discrimination— harassment, PS 30M's pay practices, the "U" rating—it contains no factual allegations suggesting that any of the foregoing were related to age.

Accordingly, Plaintiff's claim that she was discriminated against in her termination/demotion from the PS 30M K-229 position, when she was entitled to return for the 2014–2015 school year—and this claim alone—survives this motion to dismiss. The claim is adequately stated against the DOE under the ADEA and against Ms. Stinson under the NYSHRL and NYCHRL.

### b. Retaliation Claims

As a final matter, Plaintiff fails to adequately plead a retaliation claim under either the ADEA or state and local law.[3]

A prima facie case of retaliation under the ADEA has four elements: (1) the employee engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) a causal connection exists between the protected activity and the adverse action. *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016) (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)). "Protected activity" consists of opposing any practice made unlawful by the ADEA or "participat[ing] in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Opposing an unlawful practice includes a broad range of activities, including letter-writing, picketing, or making public statements. *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989) (citing cases). But raising complaints that do not relate to the relevant statutorily protected discrimination does not qualify. *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 322–23 (E.D.N.Y. 2014) (noting that informal complaints to management are only sufficient to allege protected activity if they "make it clear that the employee is complaining about conduct prohibited by [anti-discrimination] law").

Plaintiff's complaint fails to state a prima facie case at the first element, and does not otherwise raise an inference of retaliatory action. Plaintiff supports her retaliation claim by alleging that the DOE engaged in adverse actions against her in assigning her a "U" rating on

---

[3] While the NYCHRL retaliation standard is more generous than the federal standard in some respects, it maintains the same protected activity requirement that disposes of Plaintiff's federal retaliation claim. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010).

June 9 and/or in September 2014 "in retaliation for speaking up as an older employee and requesting proper pay and status to fulfill the kindergarten position." FAC ¶ 36. Even construed liberally, these facts fail to support any inference that Plaintiff was engaged in protected activity. There is no suggestion in the amended complaint that the matters Plaintiff spoke up in regards to, or PS 30M's pay policies, related in any way to age or to conduct made unlawful by the ADEA. Though the range of protected activities is broad, it does not stretch this far.

Accordingly, Plaintiff's ADEA retaliation claims against the DOE and her NYSHRL and NYCHRL retaliation claims against Ms. Stinson are DISMISSED.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The motion to dismiss is granted with respect to (a) all of Plaintiff's race discrimination claims under Title VII, the NYSHRL, and the NYCHRL; (b) Plaintiff's ADEA claims against Ms. Stinson; (c) Plaintiff's NYSHRL and NYCHRL claims against the DOE; (d) all of Plaintiff's retaliation claims under Title VII, the NYSHRL, and the NYCHRL; and (e) any of Plaintiff's claims accruing prior to March 7, 2014 or predicated on allegations regarding her pay, performance evaluation, or harassment. Accordingly, all such claims are hereby DISMISSED. Because Plaintiff was previously afforded the opportunity to amend her complaint, these claims are dismissed with prejudice.

However, the motion to dismiss is denied with respect to Plaintiff's remaining claims: that the DOE demoted or terminated her from employment at PS 30M for the 2014–2015 school year because of her age in violation of the ADEA, and that Ms. Stinson demoted or terminated her from employment because of her age in violation of the NYCHRL and NYSHRL.

The parties are reminded that this matter remains referred to Magistrate Judge Debra Freeman for general pretrial. *See* Dkt. No. 7. By separate order, Judge Freeman may schedule a case management conference.

As a final matter, the Court wishes to inform Plaintiff that a legal clinic operates in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit). The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. An unrepresented party can make an appointment in person or by calling 212-659-6190.

Chambers will mail a copy of this order to the *pro se* Plaintiff and note its mailing on the public docket.

This resolves Dkt. No. 41.

SO ORDERED.

Dated: September 27, 2018
     New York, New York

_____
ALISON J. NATHAN
United States District Judge