USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/29/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wanda Williams, <br><br>             Plaintiff, <br><br> —v— <br><br> New York City Department of Education and Principal Teri Stinson, <br><br>             Defendants. | 17-CV-1996 (AJN) <br><br> MEMORANDUM OPINION AND ORDER |

ALISON J. NATHAN, District Judge:

*Pro se* Plaintiff Wanda Williams brings this employment discrimination action against the New York City Department of Education ("DOE") and Teri Stinson. Before the Court is Defendants' motion for summary judgment. Dkt. No. 77. For the reasons stated below, the motion is GRANTED.

**I.    BACKGROUND**

The following facts are drawn from the parties' statements made pursuant to Local Civil Rule 56.1.

Since 2012, Plaintiff Wanda Williams has worked as a substitute teacher for New York City Public Schools. Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defendants 56.1"), Dkt. No. 80, ¶ 1; Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts ("Plaintiff 56.1"), Dkt. No. 101, ¶ 1. In January of 2014, Plaintiff accepted a substitute teaching assignment at Hernandez-Hughes School, P.S. 30M, through the DOE's centralized SubCentral assignment system. Defendants 56.1 ¶ 3; Plaintiff 56.1 ¶ 3. She was a substitute teacher for Lydia Torgbor's kindergarten class, which the DOE refers to as K-229. Defendants

56.1 ¶ 10; Plaintiff 56.1 ¶ 10.  As Torgbor was suffering from a medical issue, Plaintiff continued substitute teaching for K-229 on a per diem basis through March 20, 2014. Defendants 56.1 ¶ 9; Plaintiff 56.1 ¶ 9.

    Plaintiff then stopped substitute teaching for K-229 and began accepting assignments at another school.  The circumstances of her departure from P.S. 30M are disputed.  Plaintiff alleges that she was told that it was mandatory that she take one day off by the school's payroll secretary, and then subsequently had her assignment cancelled from the SubCentral system by Principal Stinson and the payroll secretary.   Amended Complaint, Dkt. No. 35, ¶¶ 38-39; Plaintiff 56.1 ¶ 13-14.  Plaintiff alleges that being forced out of the substitute role was especially harmful to her, because her work in K-229 would have given her the right under DOE and union rules to receive the K-229 position permanently for the 2014-15 school year as well, although Defendants dispute this.  Amended Complaint ¶ 27.  Defendants contend that Plaintiff abruptly and unexpectedly stopped reporting to P.S. 30M and instead began accepting substitute teaching assignments at the other school.  Defendants 56.1 ¶¶ 12-14.  P.S. 30M then found another substitute teacher to cover K-229 for the remainder of the 2013-14 school year.  Defendants 56.1 ¶ 15; Plaintiff 56.1 ¶ 15.  Torgbor retired from teaching and was replaced over that summer by a new teacher who Plaintiff claims is substantially younger than her.  Defendants 56.1 ¶¶ 28, 30; Plaintiff 56.1 ¶¶ 28, 30.  Plaintiff continued to work as a per diem substitute teacher at various DOE schools.  Defendants 56.1 ¶¶ 33-34; Plaintiff 56.1 ¶¶ 33-34.

    Plaintiff brought this lawsuit in March of 2017 alleging numerous claims of race discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§§ 290–97, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–31. *See* Amended Complaint, Dkt. No. 35. Defendants moved to dismiss the Amended Complaint in its entirety. The Court granted the motion in part and denied it in part. Dkt. No. 50. It dismissed all of Plaintiff's claims except for her claim that "she was discriminated against in her termination/demotion from the PS 30M K-229 position, when she was entitled to return for the 2014-2015 school year." *Id.* at 20. The Court concluded that this claim was "adequately stated against the DOE under the ADEA and against Ms. Stinson under the NYSHRL and NYCHRL." *Id.*

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim.

*Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citation omitted).

Finally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (emphasis omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions . . . [n]onetheless,

4

summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## III. DISCUSSION

An employment discrimination claim under the ADEA follows the familiar three-part burden shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Once this requirement is met "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Id.* (quotation omitted). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Id.* Specifically, a plaintiff at this final stage in the burden shifting analysis must, to defeat summary judgment, "present[] facts, which taken in [her] favor, suffice to show that a triable issue exists as to whether her age was a but for cause of" the adverse employment action against her. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (per curiam). The same framework applies to age discrimination claims under the NYSHRL and NYCHRL, except that, for at least the NYCHRL, the plaintiff need not establish "but-for" causation but must only show a "causal link between age bias" and the employer's decision. *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (per curiam). Regardless of the causation standard applied, the Court finds that summary judgment in favor of Defendants is warranted.

5

To establish a prima facie case of age discrimination, Plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. The inference of discrimination "can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [ageist] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge[;]. . . [or] when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015) (quotation omitted).

In this case, there is no genuine dispute of material fact that Plaintiff cannot establish a prima facie of age discrimination on her remaining claims for three independent reasons.

First, no reasonable factfinder could conclude that Plaintiff was actually terminated or demoted. Rather, the evidence indisputably shows that she voluntarily stopped working at P.S. 30M. Defendants have attached a record of Plaintiff's activity on the SubCentral system. It indicates that on Thursday, March 20, 2014 Plaintiff cancelled her assignment at P.S. 30M for the next week. *See* Exhibit G to the Declaration of John Corbin Carter, Dkt. No. 79-7. There are four relevant entries. First, at 3:08 p.m. on March 20, 2014, there was an assignment entered into the system for Plaintiff to work at P.S. 30M for March 24, 2014 through March 28, 2014. The entry states the assignment was "Pre Arranged." At 3:10 p.m. the record indicates that the assignment was "Cancelled by Administrator." But the next entry, also at 3:10 p.m., restores the P.S. 30M assignment for the week of March 24th, again with the explanation that the assignment

6

is "Pre Arranged." Then, at 4:10 p.m. on March 20th, the SubCentral record indicates that the P.S. 30M assignment for the week of March 24th was "Cancelled by Substitute" with the code "7 – Previous Assignment." At her deposition, Plaintiff testified that this code would be used to decline an assignment because the substitute teacher was taking an assignment at a different school. *See* Exhibit B to the Declaration of John Corbin Carter, Dkt. No. 79-2 ("Plaintiff Tr."), at 131-32. The records also shows that she accepted an assignment at a different school the next day. *See* Exhibit G to the Declaration of John Corbin Carter, Dkt. No. 79-7. The SubCentral entries thus indicate that Plaintiff was not terminated. Instead, Defendants offered to continue Plaintiff's work at P.S. 30M and she declined. These records are corroborated by deposition testimony from Stinson that the school was expecting her to continue the assignment and was surprised when she did not show up to teach K-229. *See* Exhibit F to the Declaration of John Corbin Carter, Dkt. No. 79-6 ("Stinson Tr."), at 112-13, 120-21.

Plaintiff provides no evidence that she was terminated, and does not give an explanation as to why the SubCentral record would indicate that she declined to continue her work at P.S. 30M.[1] She repeatedly notes that the assignment for the week of March 24th was initially cancelled. But Plaintiff entirely ignores the fact that the assignment appears to have been restored less than a minute later and then cancelled by her. And while Plaintiff claims that she was asked to take some vacation time by the school, she admits in her Amended Complaint that she was only told to "take one (1) day off." Amended Complaint ¶ 38; *see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading

---

[1] Throughout her opposition materials, Plaintiff cites to deposition transcript excerpts and other materials that she did not provide to the Court. As Plaintiff was warned in the Local Rule 56.2 notice, she "must submit evidence, such as witness statements or documents, countering the facts asserted by the Defendants and raising material issues of fact for trial" in order to defeat summary judgment. Dkt. No. 83. Plaintiff also occasionally references an opinion from another lawsuit against Defendants that relies on allegations made in the complaint from the lawsuit. Just as Plaintiff cannot "oppose summary judgment simply by relying upon the allegations in [her] complaint," she cannot also rely on the allegations in someone else's complaint. *Id.*

is a judicial admission by which it normally is bound throughout the course of the proceeding."). This conversation would explain why she did not work on March 21 but does not explain why she would decline an assignment for the following week. There is thus no genuine dispute of material fact that Plaintiff decided to leave P.S. 30M voluntarily.

Second, no reasonable factfinder could conclude that Plaintiff's departure "occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. Plaintiff testified at her deposition that she does not recall Stinson making any comments about anyone's age, derogatory or otherwise. *See* Plaintiff Tr. 47. It is also undisputed that the substitute teacher who Defendants found to cover K-229 after Plaintiff left, Rudine Wright, was only two years younger than Plaintiff. Defendants 56.1 ¶ 15; Plaintiff 56.1 ¶ 15. Indeed, Plaintiff suggests that Wright was only hired because she was a friend or relative of Stinson. Plaintiff 56.1 ¶ 15. Moreover, Plaintiff repeatedly argues that Defendants removed her from the K-229 position, because if she had stayed there for more than 30 consecutive work days, she would have been entitled to higher pay under DOE policy. *See, e.g.*, Plaintiff's Memorandum of Law in Opposition, Dkt. No. 100 at 7, 11, 15-19, 23. Indeed, Plaintiff alleges a similar motivation as to why she did not get the permanent K-229 position for the 2014-15 school year. She claims that under DOE rules, the school would have had to have paid her more than a new teacher because of her years of service teaching. *See* Plaintiff Tr. 98. But under the ADEA, "age and years of service are analytically distinct." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). An employer does not engage in age discrimination under the ADEA when they terminate someone solely because she has worked more days or years than her replacement and would therefore be entitled to higher pay.

8

Third, no reasonable factfinder could conclude that Plaintiff would have had an entitlement to the full-time K-229 position for the 2014-15 school year or that she applied for the permanent position. In her Amended Complaint, Plaintiff alleges that if she had continued to work in the K-229 slot, then she would have been entitled to the permanent full-time position for the 2014-15 school year without having to apply for it, based on DOE and union rules. *See* Amended Complaint ¶ 27. Defendants counter this assertion with testimony that all full-time teachers must go through a regular application process and that this policy is therefore nonexistent. *See* Stinson Tr. 24-25; *see also* Declaration of Peter Ianniello, Dkt. No. 81, ¶ 4. Plaintiff provides no contrary evidence or any proof of the existence of this policy. *See* Plaintiff Tr. 70-72. And it seems implausible that Plaintiff would become entitled to the K-229 position even before Lydia Torgbor even retired and relinquished that slot.

Furthermore, Plaintiff does not dispute that she did not in fact apply for the full-time K-229 position for the 2014-15 school year. Defendants 56.1 ¶ 29; Plaintiff 56.1 ¶ 29. In her 56.1 statement, Plaintiff claims that she was unable to apply to the vacancy, because Stinson gave her a poor performance rating. She claims that this poor performance rating blocked her from the entire DOE system. But this contradicts Plaintiff's own deposition testimony that she was able to access the DOE application system and had the option to apply to P.S. 30M but for whatever reason failed to do so. *See* Plaintiff Tr. 120-21. Additionally, Plaintiff admits that she only became aware of the unsatisfactory rating in September of 2014. *See* Amended Complaint ¶ 36; Plaintiff's Memorandum of Law in Opposition, Dkt. No. 100, at 31, 35. But it is undisputed that Defendants applied and interviewed the new permanent K-229 teacher in July and August of 2014. *See* Defendants 56.1 ¶ 30; Plaintiff 56.1 ¶ 30. There is no genuine dispute of material fact that Plaintiff could not receive the 2014-15 K-229 position without applying and that she also

failed to apply for the position.  Therefore, Defendants' failure to hire her for the permanent K-229 position cannot constitute age discrimination and the age of the teacher who was hired cannot support an inference of age discrimination.  *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 306 (S.D.N.Y. 2016).

Plaintiff's only remaining claims in this litigation pertained to her allegation that "she was discriminated against in her termination/demotion from the PS 30M K-229 position, when she was entitled to return for the 2014-2015 school year." Dkt. No. 50 at 20.  However, no reasonable factfinder could conclude that Plaintiff was terminated or demoted from the K-229 position, that the circumstances of her departure give rise to an inference of discrimination, or that she would have been entitled to return for the 2014-15 school year.  Accordingly, summary judgment is warranted in favor of Defendants on the remaining ADEA, NYSHRL, and NYCHRL claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to enter judgment and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is also respectfully directed to mail a copy of this Memorandum Opinion and Order to Plaintiff.

This resolves Dkt. No. 77.

Dated: April 29, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge